UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Broadcast Music, Inc.; Rondor Music International, Inc., *d/b/a* Irving Music; Rick Springfield Music; Gibb Brothers Music; Crompton Songs; Sony/ATV Songs LLC; Songs of Universal, Inc.; Escatawpa Songs, LLC; Fall Out Boy Inc., *d/b/a* Chicago X Softcore Songs; and Song 6 Music,<br><br>    Plaintiffs,<br><br>v.<br><br>Tavern 129 LLC, *d/b/a* Tavern 129; and Andre Matthew Klonecki,<br><br>    Defendants. | File No. 20-cv-435 (ECT/DTS)<br><br>**OPINION AND ORDER** |

Elisabeth Muirhead and William D. Schultz, Merchant & Gould P.C., Minneapolis, MN, for Plaintiffs.

———————————————————————————————

Plaintiffs, a non-profit performing rights organization and copyright owners of musical compositions, seek entry of a default judgment against Defendants Tavern 129 LLC and Andre Matthew Klonecki. Plaintiffs allege that Defendants infringed the copyrights in seven songs by featuring public performances of the songs and seek $28,800 in statutory damages, additional amounts for attorneys' fees, costs, and post-judgment interest, and an injunction against further infringement. Plaintiffs' motion will be granted.

The basic process for determining whether a default judgment should be entered is straightforward. The entry of default means that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." 10A C. Wright, A.

Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2688.1 (4th ed. Apr. 2021 Update) (footnotes omitted).[1]  Next, it must be determined whether the taken-as-true factual allegations of the complaint "constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (quoting *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)). If the taken-as-true allegations of the complaint constitute a legitimate cause of action, then the amount of the default judgment must be ascertained. *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000).

Start with the factual allegations of the complaint that will be taken as true. Plaintiff Broadcast Music, Inc. ("BMI") owns "the right to license the public performance rights in 15 million copyrighted musical compositions (the 'BMI Repertoire')." Compl. ¶ 4 [ECF No. 1]. The remaining Plaintiffs each own the copyright in at least one composition in the BMI Repertoire. *Id.* ¶¶ 5–14. Defendant Tavern 129 LLC is a limited liability company that "operates, maintains[,] and controls" the Tavern 129 bar in Winona, Minnesota. *Id.* ¶ 15. (From this point on, unless noted otherwise, "Tavern 129" will be used to refer to both the LLC and the bar.) Defendant Andre Matthew Klonecki operates and manages Tavern 129. *Id.* ¶ 18. Klonecki has a "direct financial interest" in Tavern 129 and "has the right and ability to supervise [its] activities." *Id.* ¶ 19. Tavern 129 "publicly performs musical compositions and/or causes musical compositions to be publicly performed." *Id.*

---

[1]  The Clerk properly entered Defendants' default. ECF No. 30. Plaintiffs served Defendants with the summons and complaint in February 2020. ECF Nos. 7, 8. Neither Defendant has responded or otherwise appeared in the case.

¶¶ 16–17. Key here, Tavern 129 has no license or other authorization for these performances. Since December 2017, BMI has telephoned or sent correspondence to Defendants more than thirty times to "educate [them] as to their obligations under the Copyright Act with respect to the necessity of purchasing a license for the public performance of musical compositions in the BMI Repertoire." *Id.* ¶ 23. BMI sent cease-and-desist letters that instructed Defendants to "immediately cease all use of BMI-licensed music in" Tavern 129. *Id.* Despite BMI's efforts, Defendants have "publicly performed and/or caused to be publicly performed" musical compositions at the Tavern 129 bar without a license or permission to do so. *Id.* ¶ 29. In this case, Plaintiffs identify seven compositions from the BMI Repertoire that Defendants caused to be publicly performed in the bar on either January 15, 2019, or February 15, 2019. *See id.* ¶¶ 24–25, Ex. A [ECF No. 1-1]. Each of the nine Plaintiffs other than BMI owned (and continue to own) the copyrights in one of those compositions. *Id.* ¶¶ 5–14, 28, Ex. A. Defendants have continued to "provide unauthorized public performances of works in the BMI Repertoire at the" Tavern 129 bar. *Id.* ¶ 30.

The taken-as-true allegations constitute legitimate causes of action for copyright infringement. "The Copyright Act entitles a copyright owner to institute a civil action for infringement of" its "'original works of authorship.'" *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (quoting 17 U.S.C. § 102(a) and citing 17 U.S.C. § 501(b)). Original works of authorship include "musical works" and "sound recordings." 17 U.S.C. § 102(a)(2), (7). To prevail on a claim of copyright infringement under § 501 of the Act, a plaintiff must show "(1) ownership of a valid copyright and (2)

3

copying of original elements of the copyrighted work." *Warner Bros. Entm't v. X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011). In the public performance context, these elements require showing:

> (a) the originality and authorship of the compositions involved; (b) compliance with the formalities required to secure a copyright under Title 17, United States Code; (c) plaintiffs' ownership of the copyrights of the relevant compositions; (d) defendants' public performance of the compositions; and (e) defendants' failure to obtain permission from the plaintiffs or their representatives for such performance.

*Odnil Music Ltd. v. Katharsis LLC*, No. CIV S-05-0545 WBSJFM, 2006 WL 2545869, at *4 (E.D. Cal. July 21, 2006). Plaintiffs plausibly allege each of these elements. Plaintiffs identify seven musical compositions which are registered original works. *See* Compl., Ex. A. Plaintiffs are the owners of copyrights of those works who "complied in all respects with the requirements of the Copyright Act and received from the Register of Copyrights Certificates of Registration[.]" *Id.* ¶¶ 5–14, 27. "Defendants publicly performed and/or caused to be publicly performed at [Tavern 129] the musical composition[s] . . . without a license or permission to do so." *Id.* ¶ 29. Together, these allegations satisfy the elements of copyright infringement. *E.g.*, *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 504–05 (E.D. Va. 2009).[2]

Plaintiffs request $28,800 in statutory damages under 17 U.S.C. § 504(c), which "constitutes an award of $4,114.29 for each of the seven [] infringements[.]" *See* Pls.'

---

[2] The Copyright Act includes narrow exemptions for establishments to play copyrighted music for customers without a license, but the facts alleged support a plausible inference that those exemptions do not apply here. *See* 17 U.S.C. § 110(4)–(5); *see also EMI April Music, Inc.*, 618 F. Supp. 2d at 505 n.4.

4

Mem. in Supp. at 3–4 [ECF No. 35]. A copyright owner may elect to recover "statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). If the copyright owner proves the infringement was willful, then it may recover up to $150,000 per copyright infringed. *Id.* § 504(c)(2); *see also Pearson Educ., Inc. v. Almgren*, 685 F.3d 691, 693 n.3 (8th Cir. 2012). Among the factors a court considers in determining an appropriate damages award are

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 374 (S.D.N.Y. 2019) (citation omitted). "Courts have found willful infringement when, for example, a defendant engages in infringing activity after receiving warning that the activity constitutes infringement and from the fact of a defendant's default." *Adventure Creative Grp., Inc. v. CVSL, Inc.*, 412 F. Supp. 3d 1065, 1073 (D. Minn. 2019) (collecting cases).

Plaintiffs have shown that an award of $4,114.29 per infringement is justified. Defendants' infringement was willful. Defendants continued to infringe despite Plaintiffs' many communications. These communications clearly informed Defendants of the need to obtain a license or halt their infringing conduct. BMI first contacted Defendants in December 2017, when it sent them "[a]n informational brochure and a BMI license agreement containing a license fee schedule[.]" Mullaney Decl. ¶ 3 [ECF No. 37]. BMI

sent Defendants nine more informational letters between December 2017 and September 2018, before sending three cease-and-desist letters between May 2018 and October 2018. *Id.* ¶¶ 4–5. BMI also telephoned Defendants twenty-seven times and "on a number of those occasions spoke to persons associated with [Tavern 129's] operation." *Id.* ¶ 7. When Defendants failed to respond, BMI sent an investigator to the Tavern 129 bar twice in January and February 2019, when the seven infringements occurred. *Id.* ¶¶ 9–14, Ex. A [ECF No. 37-1]. Despite these contacts, and two more letters from BMI that detailed its investigation, Defendants have continued to publicly perform music from the BMI Repertoire. *Id.* ¶¶ 15–20, Ex. B [ECF No. 37-2].

The damages Plaintiffs seek are reasonable in relation to the licensing fees that Defendants avoided paying. Plaintiffs have lost out on roughly $9,600 in licensing fees since December 2017, and the "current annual license fee would be approximately $2,480.00." Mullaney Decl. ¶ 20. Thus, Plaintiffs' request of $28,800 is "approximately three times the amount Plaintiffs would have received in licensing fees from Defendants to date" had Tavern 129 "properly been licensed." Pls.' Mem. in Supp. at 3–4. As Plaintiffs point out, courts commonly award "treble" damages (or more) in similar cases, which places defendants and would-be violators "on notice that it costs less to obey the copyright laws than to violate them." *Sailor Music v. IML Corp.*, 867 F. Supp. 565, 570 & n.8 (E.D. Mich. 1994) (citation omitted) (collecting cases); *see Broadcast Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 199 & n.12 (S.D.N.Y. 2016) (collecting "non-innocent infringement" cases awarding "between three and five times the cost of the licensing fees

the defendant would have paid"). Especially in view of Defendants' willful conduct, an award of $28,800—or about three times the sum of unpaid licensing fees—is appropriate.

Plaintiffs' request for attorneys' fees and costs also is reasonable and will be granted. In its discretion, a court may award costs and attorneys' fees to a prevailing party in a copyright infringement action. 17 U.S.C. § 505. This discretion must be "exercised in an evenhanded manner by considering factors such as whether the lawsuit was frivolous or unreasonable, the losing litigant's motivations, the need in a particular case to compensate or deter, and the purposes of the Copyright Act." *Killer Joe Nevada, LLC v. Does 1-20*, 807 F.3d 908, 911 (8th Cir. 2015) (quoting *Action Tapes, Inc. v. Mattson*, 462 F.3d 1010, 1014 (8th Cir. 2006)). An infringer's "blatant disregard for the law warrants an award of costs and attorneys' fees." *Tempo Music, Inc. v. Christenson Food & Mercantile Co.*, 806 F. Supp. 816, 821 (D. Minn. 1992). The Eighth Circuit applies the lodestar method to calculate a reasonable fee. *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996). Here, Plaintiffs request $1,408 in attorneys' fees and $972.30 in costs. Pls.' Mem. in Supp. at 5; Schultz Decl. ¶ 6 [ECF No. 38]. These amounts are quite reasonable in view of the lawyers' expertise and the nature of this case. Schultz Decl. ¶¶ 2–6. Plaintiffs' supporting documentation appropriately itemizes time entries and costs for tasks reasonably necessary for litigating this case to default judgment; indeed, Plaintiffs subtracted fees and costs incurred in connection with a separate Defendant who was voluntarily dismissed from this case. *Id.* ¶ 10, Exs. 1–2 [ECF No. 38-1].

Plaintiffs have a right to post-judgment interest under 28 U.S.C. § 1961. Post-judgment interest will begin to accrue from the day judgment is entered and on Plaintiffs'

total award, including costs and attorneys' fees, until the judgment is satisfied. *Jenkins by Agyei v. Missouri*, 931 F.2d 1273, 1275 (8th Cir. 1991) ("The phrase 'any money judgment' in section 1961(a) is construed as including a judgment awarding attorneys' fees."); *see, e.g.*, *Minn. Voters All. v. City of Saint Paul*, No. 19-cv-358 (WMW/HB), 2021 WL 1100901, at *7 (D. Minn. Mar. 23, 2021). Here, then, post-judgment interest will be awarded at 0.05% per annum, "a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a).

Finally, Plaintiffs seek a permanent injunction enjoining Defendants from continuing to infringe Plaintiffs' copyrighted musical compositions. Pls.' Mem. in Supp. at 5. Under 17 U.S.C. § 502(a), a court may grant permanent injunctive relief on terms that are "reasonable to prevent or restrain infringement of a copyright." Determining whether a permanent injunction should issue requires balancing three factors: "(1) the threat of irreparable harm to the moving party; (2) the balance of harm between this harm and the harm suffered by the nonmoving party if the injunction is granted; and (3) the public interest." *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 967 (8th Cir. 2005). "In copyright actions, courts traditionally have been willing to grant permanent injunctions once liability is established and a continuing threat to the copyright exists." *Nat'l Football League v. McBee & Bruno's, Inc.*, 792 F.2d 726, 732 (8th Cir. 1986).

Permanent injunctive relief is warranted. First, Plaintiffs have shown a threat of irreparable harm, which "inescapably flows from the denial" of their right to control copyrighted works. *Taylor Corp.*, 403 F.3d at 968. Plaintiffs are otherwise without an

adequate legal remedy to restrain Defendants' continued use of their music at Tavern 129. *E.g.*, *Twist & Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp. 2d 782, 785 (E.D. Tex. 2006). Second, the burden imposed on Defendants—essentially, to honor the Copyright Act by refraining from unlicensed use of Plaintiffs' music—is slight, whether viewed in isolation or against the threat of irreparable harm. *See, e.g.*, *Warner Bros. Records Inc. v. Walker*, 704 F. Supp. 2d 460, 469 (W.D. Pa. 2010). Finally, the "public interest is the interest in upholding copyright protections. . . . [T]he public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Taylor Corp.*, 403 F.3d at 968 (internal quotation marks and citations omitted). Because these factors weigh decidedly in Plaintiffs' favor, the request for a permanent injunction will be granted.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Plaintiffs' Motion for Default Judgment [ECF No. 32] is **GRANTED** as follows:

1. Defendants Tavern 129 LLC and Andre Matthew Klonecki are jointly and severally liable to Plaintiffs for:

    a. $28,800 in statutory damages under 17 U.S.C. § 504(c);

    b. $2,380.30 for costs and attorneys' fees under 17 U.S.C. § 505;

    c.  post-judgment interest at a rate of 0.05% per annum—accruing from the date judgment is entered until the judgment is satisfied and computed as described in 28 U.S.C. § 1961(b).

2. Defendants Tavern 129 LLC and Andre Matthew Klonecki, along with their agents, servants, employees, or any other person acting under their permission or authority, are permanently enjoined from infringing, in any way, the copyrighted musical compositions licensed by Plaintiff Broadcast Music, Inc.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 11, 2021

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court